**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| **ROEL DELAGARZA HINOJOSA AND** | § | |
| **MARTHA BARRERA HINOJOSA,** | § | |
| *Plaintiffs*, | § | **CIVIL ACTION NO.** |
| | § | **7:23-cv-00443-RHH** |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **EQUISOLAR, INC. AND** | § | |
| **LORENZO MEZI,** | § | |
| *Defendants*. | § | |

---

**DEFENDANT EQUISOLAR'S REPLY IN SUPPORT
OF ITS MOTION TO COMPEL ARBITRATION**

---

**TO THE HONORABLE COURT:**

      **COMES NOW, DEFENDANTS, EQUISOLAR, INC.,** in the above-styled matter and files this *Defendant Equisolar, Inc.'s Reply in Support of its Motion to Compel Arbitration* (**"Reply"**). In support thereof, Defendant would respectfully show unto the Court the following:

## INTRODUCTION

1.     This case involves a home improvement agreement between Plaintiffs Roel Delagarza Hinojosa and Martha Barrera Hinojosa (**"Plaintiffs"** or **"Mr. and Mrs. Hinojosa"**) and Defendant Equisolar, Inc. (**"Defendant"** or **"Equisolar"**) to install solar panels on Plaintiffs' residence. Defendant completed the installation on Plaintiffs' home, as per the agreement. After Defendant fully performed under the contract, Plaintiffs initiated the instant lawsuit.

2.     It would be improper for this court to reach the merits of Plaintiff's claims because it is not the proper venue for the resolution this dispute. The arbitration provision is extremely broad, encompassing all of Plaintiffs' claims. The parties' arbitration provision also delegated

arbitrability issues to the arbitrator by the broad, unconditional language of the clause itself, and the incorporation of JAMS arbitration rules into the agreement.

3.      The parties' arbitration clause is *substantively* valid and enforceable because JAMS arbitration is not cost prohibitive when considering savings on discovery costs, the availability of the same claims in arbitration, and the $1,000,000 in damages sought by the plaintiff in this contingency fee case.

4.      The parties' arbitration clause is *procedurally* valid and enforceable because the Plaintiff speaks English, the arbitration clause was conspicuous, and no facts are before the court that the defendant misrepresented the arbitration clause itself.

## **FACTUAL BACKGROUND**

5.      Equisolar is a renewable energy company that has been operating throughout California, Florida, Nevada, Texas and Utah for over 25 years. Equisolar provides high quality products and renewable energy solutions to its residential, commercial, government, and nonprofit clientele. Equisolar assists their customers in upgrading their electrical systems to benefit their needs as well as the environment's.

6.      On April 8, 2021, Plaintiffs entered into a contractual agreement with Equisolar for the sale and installation of home solar systems (collectively, the "Agreement"). Def.'s Mot. Compel, Ex A. The agreement contains an arbitration clause, which states, in relevant part:

> PLEASE READ THIS SECTION CAREFULLY. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY….

> We agree that any dispute, claim or disagreement between us (a "Dispute") shall be resolved exclusively by arbitration….

The arbitration, including the arbitrator, will be administered by JAMS, under its Streamlined Arbitration Rules (the "Rules") by a single neutral arbitrator agreed on by the parties within thirty (30) days of the commencement of the arbitration. The arbitration shall be governed by the Federal Arbitration Act (Title 9 of the U.S. Code)....

The arbitrator shall have the authority to award any legal or equitable remedy or relief that a court could order or grant under this agreement….

BECAUSE YOU AND WE HAVE AGREED TO ARBITRATE ALL DISPUTES, NEITHER OF US WILL HAVE THE RIGHT TO LITIGATE THAT DISPUTE IN COURT, OR TO HAVE A JURY TRIAL ON THAT DISPUTE, OR ENGAGE IN DISCOVERY EXCEPT AS PROVIDED FOR IN THE RULES.

Def.'s Mot. Compel, **Ex. A** ¶ 15.

7.      The Agreement also included a clause that Texas law would govern the Agreement.

Def.'s Mot. Compel, Ex. A ¶ 13.

8.      JAMS' Rules read in relevant part:

Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

Ex. B at 12-13. A true and correct copy of the JAMS' Rules is attached hereto as

**Exhibit B.**

9.      Discovery in the simplest litigation can easily exceed $10,000. Ex. C. A true and correct

copy of Affidavit of L. Mousilli is attached hereto as **Exhibit C.** JAMS rules greatly simplify

discovery compared to litigation, resulting in significant savings. Ex. B.

10.      A final arbitration hearing of this case would likely not take more than one day. Ex. C

(Affidavit of L. Mousilli). The arbitrator's rate will likely be between $400.00 and $450.00 per

hour. One of the most cost-effective aspects of arbitration–saving discovery costs. Ex. B. JAMS rules greatly simplify discovery compared to litigation, resulting in significant savings. Ex. B.

11.     Plaintiffs' complaint and Response to this motion contain no specific facts concerning their ability to afford either litigation or arbitration. Compl.; Pl.'s Resp. Mot. Compel, Ex. E. Instead, the Plaintiffs' response and affidavit includes conclusory statements that "Plaintiffs cannot afford these costs. Plaintiffs do not have any disposable money to pay for arbitration." Pl.'s Resp. Mot. Compel, Ex. E.

12.     Plaintiffs' complaint, response to this motion, and affidavit also lack any evidence that the Plaintiffs have made any effort to reduce the likely charges through requests for fee waivers, pro bono arbitrators, or even simply requesting a one arbitrator panel. Compl.; Pl.'s Resp. Mot. Compel, Ex. E.

13.     Plaintiffs have presented no specific facts related to the circumstances surrounding the adoption of the arbitration clause, specifically. Compl.; Pl.'s Resp. Mot. Compel, Ex. E. Plaintiff's complaint, response to this motion, and his affidavit contain facts related to the circumstances of the larger "container" agreement.  Compl.; Pl.'s Resp. Mot. Compel, Ex. E. Plaintiffs' allege no *specific* facts that support the contention that Defendant hid or misrepresented the arbitration clause in particular, and instead only make a bald, conclusory assertion. Compl.; Pl.'s Resp. Mot. Compel ¶20.

14.     There is no indication that the Plaintiff was functionally illiterate, was infirm from age, or was otherwise unsophisticated.

15.     There is no evidence that at the time of contracting the Plaintiffs asked questions, requested explanations, or indicated they were uneducated.

## ARGUMENTS AND AUTHORITIES

### I. THE LAW SETS A DOUBLY HIGH BAR FOR PLAINTIFFS ARGUING AN ARBITRATION CLAUSE IS INVALID DUE TO UNCONSCIONABILITY, AND STRONGLY CAUTIONS AGAINST SETTING THE UNCONSCIONABILITY BAR TOO LOW.

16. There are two types of unconscionability–substantive and procedural. *In re Halliburton*, 80 S.W.3d 566, 571 (Tex. 2002). Substantive unconscionability refers to the fairness of the arbitration provision itself. *Service Corp. Intern. v. Lopez*, 162 S.W.3d 801, 809 (Tex. App. Corpus Christi 2005); *In re Media Arts Group, Inc.*, 116 S.W.3d 900, 910 (Tex. App. Houston 14th Dist. 2003). Procedural unconscionability focuses the circumstances surrounding the adoption of the arbitration agreement. *See Royston*, 467 S.W.3d at 499; *Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 132 (Tex. App.--El Paso 2018); *Delfingen US-Tex., L.P. v. Valenzuela*, 407 S.W.3d 791, 797-98 (Tex. App.--El Paso 2013, no pet.) (agreement not enforced).

17. The bar for plaintiffs asserting unconscionability is doubly high. First, Texas' strong policy in favor of enforcement of arbitration clauses sets a high bar for plaintiffs seeking to avoid an agreement to arbitrate, generally. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992) Once the existence of an arbitration agreement has been established, a presumption attaches favoring arbitration. *Henry v. Gonzalez*, 18 S.W.3d 684, 689 (Tex. App.–San Antonio 2000, pet. dism'd by agr.).

18. Second, the bar to invalidate an arbitration clause on the specific basis of unconscionability is even higher. *Ridge Nat. Resources, L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 131 (Tex. App.--El Paso 2018); *Besteman v. Pitcock*, 272 S.W.3d 777, 789 (Tex.App.—Texarkana 2008, no pet.). Courts focus on just the agreement to arbitrate, not the contract as a whole. *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 898 (Tex. 2010); *In re FirstMerit Bank, N.A.*,

52 S.W.3d 749, 756 (Tex.2001) (orig.proceeding) (stating that plaintiffs' defenses of unconscionability, duress, fraudulent inducement, and revocation "must specifically relate to the Arbitration Addendum itself, not the contract as a whole, if they are to defeat arbitration"). Absent "shocking," "gross," "irrational" disparities in the arbitration clause itself, an arbitration clause is valid and enforceable. *Bonded Builders Home Warranty Association of Texas, Inc. v. Smith*, 488 S.W.3d 468, 483 (Tex. App. Dallas 2016). The totality of the circumstances surrounding the negotiations *must be sufficiently shocking* that the court is *compelled* to intercede. *ReadyOne Industries, Inc. v. Flores*, 460 S.W.3d 656, 667 (Tex. App. El Paso 2014).  The agreement to arbitrate must be "so one-sided, with so gross a disparity in the values exchanged, that no rational contracting party would have entered the contract." *Hous. AN USA, LLC v. Shattenkirk*, 669 S.W.3d 392, 395 (Tex. 2023) (quoting *In re Olshan Foundation Repair Co., LLC*, 828 S.W.3d 883, 892 (Tex. 20100). Put another way, so long as the arbitral forum is an adequate (as opposed to ideal) and accessible substitute to litigation, the arbitration clause is valid and enforceable. *Lennar Homes of Texas Inc. v. Rafiei*, --- S.W.3d ---- , 2-3 (2024) (2024 WL 1470909).

19.      Adding to this is the caution the Texas Supreme Court requires when plaintiffs seek to invalidate arbitration clauses by arguing unconscionability. "We should be wary of setting the bar for holding arbitration clauses unconscionable too low." *In re Olshan*, 828 S.W.3d at 892-893. "Courts should also use care not to intrude upon arbitral jurisdiction under the guise of an unconscionability defense." *Venture Cotton Coop. v. Freeman*, 494 S.W.3d 186, 232 (Tex. App.—Eastland 2015, no pet.).

20.      Plaintiff attempts to turn the law surrounding interpretation of arbitration provisions on its head by referring to general rules of contract interpretation, instead of the more specific rules applicable to arbitration. Pl.'s Resp. Mot. Compel ¶ 10-12. As pointed out *supra*, Texas courts

have a strong policy specific to such agreements and that policy favors interpretations that support

enforcement of the arbitration agreement.


**II.    THE COURT MAY ONLY CONSIDER THE SUBSTANTIVE VALIDITY OF THE ARBITRATION CLAUSE ALONE, NOT THE ENTIRE CONTRACT, BECAUSE ARBITRABILITY HAS BEEN DELEGATED TO THE ARBITRATOR BY THE BROAD, UNCONDITIONAL LANGUAGE OF THE CLAUSE ITSELF, AND THE INCORPORATION OF JAMS ARBITRATION RULES INTO THE AGREEMENT.**

21.    An arbitration provision can "delegate" unconscionability questions to the arbitrator. *See*

*RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 121 (Tex. 2018). In those situations, it is for the

arbitrator to determine the question of unconscionability, not the court; the court has no choice but

to compel arbitration with one explicitly "narrow" exception. *See RSL Funding*, 569 S.W.3d at

121; *Shattenkirk*, 669 S.W.3d at 397 (Tex. 2023). That narrow exception is "whether the party

opposing arbitration has proven that the cost of arbitrating this delegated threshold issue of

[substantive] unconscionability is excessive, ***standing alone***, and prevents the party from

enforcing its rights." (emphasis added). "In other words, [a plaintiff] must show that the delegation

provision[–as opposed to the entire arbitration provision–]is itself unconscionable." *See RSL*

*Funding*, 569 S.W.3d at 121 ("When faced with [a delegation clause], courts have no discretion

but to compel arbitration unless the clause's validity is challenged on legal or public policy

grounds."); *Rent-A-Center*, 561 U.S. at 68-71, 73-74 (holding that under the FAA, when an

arbitration agreement contains a delegation provision, unconscionability is for the arbitrator to

decide unless the delegation provision itself is specifically challenged as unconscionable). The

courts look at the cost of deciding *only* the substantive unconscionability of *only* the arbitration

clause, not the contract as a whole, and not even the procedural unconscionability of the arbitration

clause.  *See RSL Funding*, 569 S.W.3d at 121; *Rent-A-Center*, 561 U.S. at 68-71, 73-74.

22.    Delegation can happen in two ways. First, an arbitration provision can expressly delegate arbitrability issues to the arbitrator through a broad wording. *TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 702-03, 712-19 (2023); *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631 (Tex. 2018); *RSL Funding*, 569 S.W.3d at 120. In this instance, "the determination of whether parties have agreed to delegate arbitrability to an arbitrator is governed by 'ordinary state-law principles that govern the formation of contracts.'" *TotalEnergies*, 667 S.W.3d at 702-03 (2023) (citing *First Options*, 514 U.S. at 943, 944, 115 S.Ct. 1920, 115 S.Ct. 1920). "When interpreting a written contract, the prime directive is to ascertain the parties' intent as expressed in the instrument." *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 757 (Tex. 2018). "'[O]bjective, not subjective, intent controls,' so the focus is on the words the parties chose to memorialize their agreement." *Id.*

23.    Second, parties can delegate the arbitrability issue to the arbitrator by agreeing to specific arbitration rules that call for such issues to be delegated. *TotalEnergies*, 667 S.W.3d at 708-12. Examples include "the arbitration [is] to be conducted in accordance with the rules of the AAA," "the procedure of the arbitration proceedings shall be in accordance with the Commercial Rules of the AAA," and "the arbitrator 'shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.'" *Id.* at 709. These are AAA rules, but similar rules have the same effect. Id. at 708.

24.    Turning to the present case, both methods of delegation apply. The parties' arbitration clause is broad and unqualified. "We agree that any dispute, claim or disagreement between us (a "Dispute") shall be resolved exclusively by arbitration." Def.'s Mot. Compel, Ex. A ¶ 15.

25.     In addition to this broad and unqualified expression that all matters will be decided by the arbitrator, the arbitration clause confirms the intent of the parties by stating that they will have no recourse to state or federal courts. "BECAUSE YOU AND WE HAVE AGREED TO ARBITRATE ALL DISPUTES, NEITHER OF US WILL HAVE THE RIGHT TO LITIGATE THAT DISPUTE IN COURT, OR TO HAVE A JURY TRIAL ON THAT DISPUTE, OR ENGAGE IN DISCOVERY EXCEPT AS PROVIDED FOR IN THE RULES." Def.'s Mot. Compel, Ex. A ¶ 15.

26.     Plaintiff's argument that the parties' arbitration clause is narrow begs credulity and would unmake the narrow/broad distinction the law recognizes. Plaintiff's argument relies on importing language from page 1 of the "container" contract that never appears in the arbitration clause itself, which as a matter of law is considered a separate agreement and must be analyzed separately. Plaintiff's argument, if successful, would set a precedent where an arbitration clause could never be considered broad simply because the subject matter of the container agreement would always be shoehorned into the arbitration clause in every case as a matter of law.

27.     In addition, the parties specifically incorporated the JAMS rules into their agreement by reference and the JAMS rules delegate arbitrability issues to the arbitrator with language almost identical to the AAA rules. The contract states:

> The arbitration, including the selecting of the arbitrator, will be administered by JAMS, under its Streamlined Arbitration Rules (the "Rules") by a single neutral arbitrator agreed on by the parties within thirty (30) days of the commencement of the arbitration….

> The arbitrator shall have the authority to award any legal or equitable remedy or relief that a court could order or grant under this agreement.

Def.'s Mot. Compel, Ex. A ¶ 15

28.     JAMS' Rules read in relevant part:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

Ex. B at 12-13.

29.     Together the incorporation of the JAMS Rules into the parties' arbitration agreement and the JAMS Rules specific delegation of arbitrability issues to the arbitrator require this court to either grant Plaintiff's motion, or alternatively, limit the scope of Defendant's unconscionability argument to the substantive unconscionability of just the arbitration provision. That means that any analysis of costs needs to be limited to the cost of deciding the arbitrability issue alone. Since Plaintiff has presented no evidence limited to this scope, the parties should be compelled to arbitration.

## III.    THE PARTIES' ARBITRATION CLAUSE IS *SUBSTANTIVELY* VALID AND ENFORCEABLE BECAUSE JAMS ARBITRATION IS NOT COST PROHIBITIVE WHEN CONSIDERING DISCOVERY COSTS, THE AVAILABILITY OF THE SAME CLAIMS IN ARBITRATION, AND THE $1,000,000 IN DAMAGES SOUGHT BY THE PLAINTIFF IN THIS CONTINGENCY FEE CASE.

30.     Substantive unconscionability refers to the fairness of the arbitration provision itself. *Service Corp. Intern. v. Lopez*, 162 S.W.3d 801, 809 (Tex. App. Corpus Christi 2005); *In re Media Arts Group, Inc.*, 116 S.W.3d 900, 910 (Tex. App. Houston 14th Dist. 2003). An arbitration provision that allows an individual plaintiff to seek the same claims and remedies in arbitration as they would in litigation is valid and enforceable, i.e. not unconscionable. *In re Odyssey Healthcare,*

*Inc.*, 310 S.W.3d 419, 423 (Tex. 2010). An arbitration provision is valid and enforceable as long as it is not shockingly one-sided in light of the parties' general commercial background and the commercial needs of the particular case. *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008); *In re Palm Harbor Homes, Inc.*, 129 S.W.3d 636, 645 (Tex. App. Houston 1st Dist. 2003); *AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190 (Tex. App. Houston 14th Dist. 2003).

31.     To determine whether an arbitral forum is an adequate substitute for litigation on the basis of costs, courts consider (1) the claimant's ability to pay the arbitration fees and costs, (2) the expected cost differential between arbitration and litigation and whether that differential is so substantial that it deters the claimant from bringing its claims, and (3) the actual cost of arbitration compared to the total amount of damages that the claimant is seeking. *In re Olshan*, 328 S.W.3d at 893-94. A plaintiff also must prove their ability to afford litigation, but not arbitration. *Lennar Homes*, --- S.W.3d at 2-3 (2024) (2024 WL 1470909) (citing *Shattenkirk*, 669 S.W.3d at 397).

32.     "The desire to avoid steep litigation expense—including the costs of longer proceedings, more complicated appeals on the merits, discovery, investigations, fees, and expert witnesses—is the purpose of arbitration in the first place." *In re Olshan*, 328 S.W.3d at 894. One may not "assume the most expensive possible scenario." *Id.* at 897 (citation omitted). Studies have confirmed the cost effectiveness of arbitration. 25 No. 08 Westlaw Journal Class Action 08. Data showed that "[a]rbitration can be an efficient and "surprisingly affordable" forum for plaintiffs," following the most comprehensive study of arbitration costs to date. *Id.*

> Across the data set [of 41,000 cases], the study found that arbitrations wrap up, on average, in about 11 months. (Employment cases take the longest, and even they take just 14 months to reach a conclusion.) Plaintiffs' share of arbitration fees, on average, was $1,114, a "manageable" amount, according to Professors Horton and Chandrasekher, considering that arbitration fees can run into tens of thousands of dollars.

> In JAMS employment proceedings, for instance, the average arbitrator's fee was more than $37,000 – but plaintiffs paid, on average, just $62. The median fee in cases that went to a final resolution was $0, which means, according to the law profs, that the majority of plaintiffs who fully prosecuted their claims paid nothing at all to arbitrators.

33.     Vague and conclusory statements are insufficient, e.g. statements by a plaintiff that paying "anything above" the cost to litigate would cause him financial hardship, or attorney statements about arbitration costs being "astronomically higher" while litigation cost would be "minimal." *Shattenkirk*, 669 S.W.3d at 397; *Lennar Homes*, --- S.W.3d at 4. Plaintiff must provide concrete evidence of what costs for the case *sub judice* likely will be, and do so in such a way that the court can compare the plaintiff's ability to pay with those likely costs. *Lennar Homes*, --- S.W.3d at 4. Without that, a plaintiff "cannot show that those costs are what make the expense of arbitrating 'prohibitive.'" *Id.* "[M]aking the required showing entails presenting more than evidence of the 'risk' of incurring excessive costs; it requires 'specific evidence that a party will actually be charged excessive arbitration fees.'" *Shattenkirk*, 669 S.W.3d at 395 (quoting *In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007)).

34.     A plaintiff's failure to make "any effort to reduce the likely charges through requests for fee waivers, pro bono arbitrators, or even simply requesting a one arbitrator panel," weighs heavily against a finding of substantive unconscionability. *In re Olshan*, at 897; see also *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001) (holding that the plaintiffs failed to present legally sufficient evidence of unconscionability and noting that the AAA may defer or reduce fees in cases of extreme hardship).

35.     Turning to the present facts, the parties' arbitration clause is substantively valid and enforceable because it allows the plaintiffs to file any individual claim available to him at law. Def.'s Mot. Compel, Ex. A ¶ 15. It also places no limits on the remedies they can seek in

arbitration. Def.'s Mot. Compel, Ex. A ¶ 15. Although JAMS streamlines discovery, Plaintiffs have access to discovery mechanisms. Pl.'s Resp. Mot. Compel, Ex. A at 12-13. Costs are shared, not shifted. This makes arbitration equal to litigation.

36.     As for the Plaintiff's ability to pay, the plaintiffs appear capable of paying for arbitration for at least two reasons. First, they were able to finance $42,735 in home improvements. Def.'s Mot. Compel, Ex. A ¶2.

37.     Second, Plaintiffs appear capable of seeking out and retaining an attorney willing to take the case on a contingency fee basis and pay the costs associated with pursuing the case. Now that Plaintiffs' counsel has agreed to take the case, the plaintiffs' financial burden is no longer an issue. Allowing Plaintiff's attorney to invalidate the parties' arbitration agreement to increase his profit margin severely undermines the strong policies in favor of enforcing arbitration clauses.

38.     In the alternative, if we ignore the contingency nature of Plaintiff's representation, the plaintiff has admitted that he cannot afford to litigate the matter, in any event, as required by *Lennar Homes of Texas.* --- S.W.3d ---- , 2-3 (2024) (2024 WL 1470909) (citing *Shattenkirk*, 669 S.W.3d at 397). The upshot in that event is that arbitration is no better or worse than litigation because the plaintiff cannot afford either.

39.     There is no substantial cost difference between arbitration and litigation. The scope of the cost inquiry is limited to the cost of deciding arbitrability. As Plaintiff has not submitted evidence limited to that scope and the burden is on him to produce such evidence, the parties should be compelled to arbitration.

40.     Plaintiff overestimates the cost of deciding the entire case as well, because he "assume[s] the most expensive possible scenario," an assumption specifically rejected by the Texas Supreme Court. *Olshan*, 328 S.W.3d at 897. A final arbitration hearing of this case would likely not take

more than one day. Ex. C. The arbitrator's rate will likely be between $400.00 and $450.00 per hour. One of the most cost-effective aspects of arbitration–saving discovery costs. Ex. C. JAMS rules greatly simplify discovery compared to litigation, resulting in significant savings. Ex. C.

41.    In addition, Plaintiffs have failed to present the kind of specific facts required to support their argument on costs. Their affidavit includes conclusory statements about "not being able to pay" and not having "disposable income." Compl.; Pl.'s Resp. Mot. Compel, Ex. E. Such statements are insufficient as a matter of law.

42.    There is also no evidence the Plaintiff has made, "any effort to reduce the likely charges through requests for fee waivers, pro bono arbitrators, or even simply requesting a one arbitrator panel." This compounds the lack of specific evidence of his financial resources.

43.    Lastly, and most obviously, the amount in controversy far outstrips the cost of arbitration. Plaintiff is asking for up to $1,000,000, including a claim for punitive damages.

44.    The facts of the present case and those in *Cont'l Homes of Tex., L.P. v. Perez* differ in several important respects, making it a poor precedent for the current analysis. No. 04-21-00396-CV, 2022 WL 10758697, 2022 Tex. App. LEXIS 7691, at *9-15 (Tex. App.—San Antonio Oct. 19, 2022, no pet.). First, the plaintiffs in *Cont'l Homes* submitted specific budget information in support of their opposition to arbitration. 04-21-00396-CV, 2022 WL 10758697, 2022 Tex. App. LEXIS 7691, at *4-5. The Plaintiffs here have submitted no specific facts in support of their opposition, only conclusory statements. Second, the *Cont'l Homes* arbitration would have been decided by a panel of three arbitrators, significantly driving up costs. 04-21-00396-CV, 2022 WL 10758697, 2022 Tex. App. LEXIS 7691, at *4. The parties' agreement here specifically states that disputes will be decided by a single arbitrator. Def.'s Mot. Compel, Ex. A ¶ 15. Third, *Cont'l Homes* did not consider the cost savings available in arbitration as a result of the simplified

discovery process. These differences coupled with the fact that the case was being reviewed for abuse of discretion leave this court free to make its own decision based on the totality of the facts *sub judice*.

IV.     **THE PARTIES' ARBITRATION CLAUSE IS *PROCEDURALLY* VALID BECAUSE THE PLAINTIFFS WERE GIVEN A SPANISH TRANSLATION, THE ARBITRATION CLAUSE WAS CONSPICUOUS, AND NO FACTS ARE BEFORE THE COURT THAT THE DEFENDANT MISREPRESENTED THE ARBITRATION CLAUSE ITSELF.**

45.     Procedural unconscionability focuses the circumstances surrounding the adoption of the arbitration agreement. *See Royston*, 467 S.W.3d at 499; *Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 132 (Tex. App.--El Paso 2018); *Delfingen US-Tex., L.P. v. Valenzuela*, 407 S.W.3d 791, 797-98 (Tex. App.--El Paso 2013, no pet.) (agreement not enforced). Procedural unconscionability only apples if the circumstances surrounding the adoption of the arbitration agreement are shocking. *Delfingen*, 407 S.W.3d at 798; *Brackenridge Healthcare, Inc. v. Camero*, No. 04-22-00271-CV, 2023 WL 3107064, at *3 (Tex. App.--San Antonio Apr. 27, 2023). "The few cases in which courts have found procedural unconscionability involve situations in which one of the parties was incapable of understanding the agreement without assistance, and the other party did not provide that assistance," such as when one of the parties is functionally illiterate or does not speak English and were not provided a Spanish translation of the clause. *Superbag Operating Co. v. Sanchez*, No. 01-12-00342-CV, 2013 WL 396247, at *6 (Tex. App. Jan. 31, 2013); *BBVA Compass Inv. Sols., Inc. v. Brooks*, 456 S.W.3d 711, 724 (Tex. App.—Fort Worth 2015, no pet.). That said, one party to an arbitration provision has no general duty to explain the provision to the other party. See *Emerald Texas, Inc. v. Peel*, 920 S.W.2d 398, 401 (Tex. App.--Hous. [1st Dist.] 1996) ("a failure to disclose information is not fraudulent unless one has an affirmative duty to disclose, such as where a confidential or fiduciary relationship exists.").

46.     "[A] party to an arms-length transaction is charged with the obligation of reading what he signs and, failing that, may not, thereafter, without a showing of trickery or artifice, avoid the instrument on the ground that he did not know what he was signing." *Micocina, Ltd. v. Balderas-Villanueva*, 2017 WL 4857017, at *5 (quoting *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962)). "If a person is unable to read a contract, it is his duty to find some reliable person to read and explain it to him before he signs it." *Id.*, at *6; *Brackenridge Healthcare, Inc. v. Camero*, No. 04-22-00271-CV, 2023 WL 3107064, at *5 (Tex. App.--San Antonio Apr. 27, 2023). Even a situation in which the plaintiff swore out an affidavit that he "(1) was not given time to review them; (2) was not informed of their contents; and (3) did not remember signing the MAA," the court found no evidence of affirmative misrepresentation, trick, or avarice. *ReadyOne Indus., Inc. v. Casillas*, 487 S.W.3d 254, 262 (Tex. App. 2015).

47.     "[T]estimony that a party is unsophisticated, or that [he] would not have signed the arbitration agreement if the concept of arbitration had been explained to [him] does not establish procedural unconscionability." *H-E-B, LP v. Saenz*, No. 01-20-00850-CV, 2021 WL 4733460, at *4 (Tex. App.—Houston [1st Dist.] Oct. 12. 2021, pet. denied). An arbitration provision is not unconscionable "because one party to the agreement may have been in a less advantageous bargaining position." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 679 (recognizing that parties claiming they were unsophisticated persons, who would not have signed the arbitration agreement if the concept of arbitration had been explained to them, failed to establish procedural unconscionability); *Brackenridge Healthcare, Inc. v. Camero*, No. 04-22-00271-CV, 2023 WL 3107064, at *3 (Tex. App.--San Antonio Apr. 27, 2023).

48.     Absent fraud, misrepresentation, or deceit, one who signs a contract is deemed to know and understand its contents and is bound by its terms. *Royston, Rayzor*, 467 S.W.3d at 500; *In re*

*Bank of Am., N.A.*, 278 S.W.3d 342, 344–45 (Tex. 2009) (orig. proceeding); *Nichols Ford, Ltd. v. Garza*, No. 02-20-00191-CV, 2021 WL 3931916, at *4 (Tex. App.--Fort Worth Sept. 2, 2021).

49.    "[W]hen [an] arbitration provision in an agreement is conspicuous, a party may not avoid its effect by asserting that he did not notice the provision or that it was not pointed out to him." *Beldon Roofing & Remodeling Co. v. Tanner,* No. 04-97-00071-CV, 1997 WL 280482, at *2 (Tex.App.-San Antonio May 28, 1997, orig. proceeding) (per curiam) (not designated for publication); *In re MHI Partn., Ltd.*, No. 14-07-00851-CV, 2008 WL 2262157, at *4 (Tex. App.--Hous. [14th Dist.] May 29, 2008).

50.    Questions related to the validity or enforceability of the broader "container" contract–such as fraudulent inducement–are no evidence of procedural unconscionability of the arbitration agreement. See *Darling Homes of Texas, LLC v. Khoury*, No. 01-20-00395-CV, 2021 WL 1918772, at *6 (Tex. App.--Hous. [1st Dist.] May 13, 2021); *RSL Funding*, 569 S.W.3d at 124; *Perry Homes*, 258 S.W.3d at 589. Such allegations relate to the contract as a whole, and are questions for the arbitrator, not the court. See *Darling Homes of Texas, LLC v. Khoury*, No. 01-20-00395-CV, 2021 WL 1918772, at *6 (Tex. App.--Hous. [1st Dist.] May 13, 2021); *RSL Funding*, 569 S.W.3d at 124; *Perry Homes*, 258 S.W.3d at 589.

51.    Courts readily conclude that plaintiffs understood an arbitration provision where the plaintiffs did not ask questions, did not request any explanations, and did not indicate they were uneducated/illiterate, particularly where the defendant never concealed or misstated the terms of the arbitration provision. *In re Rangel*, 45 S.W.3d 783, 787 (Tex. App.--Waco 2001).

52.    "One party's refusal to contract with another absent an arbitration provision does not establish procedural unconscionability." *In re MHI Partn., Ltd.*, No. 14-07-00851-CV, 2008 WL 2262157, at *3 (Tex. App.--Hous. [14th Dist.] May 29, 2008); *In re U.S. Home Corp.,* 236 S.W.3d

761, 764 (Tex.2007) (orig.proceeding) (per curiam); *see also In re Halliburton Co.,* 80 S.W.3d at 572 (arbitration provision not procedurally unconscionable because employer made "take it or leave it" offer to at-will employee).

53.     Turning to the present facts, Plaintiffs have presented no facts related to the arbitration agreement specifically. None in the Complaint, none in the response, and none in the affidavit. Compl.; Pl.'s Resp. Mot. Compel, Ex. E. Plaintiffs have only presented facts related to the circumstances of the larger "container" agreement, and consequently, entirely fail their burden of proof as a matter of law.

54.     There is no evidence that Defendant hid the arbitration agreement, or misrepresented any aspect of it. In fact, the first paragraph of the arbitration agreement is conspicuously in all capitals and admonishes the Plaintiffs to "PLEASE READ THIS SECTION CAREFULLY." Def.'s Mot. Compel, Ex. A ¶ 15.

55.     There is no indication that the Plaintiffs were functionally illiterate, was infirm from age, or is otherwise unsophisticated. Thus, Defendant had no duty to explain the provision to Plaintiffs. The law charges the plaintiff with "the obligation of reading what he signs and, failing that, [he] may not, thereafter,... avoid the instrument on the ground that he did not know what he was signing." *Micocina*, 2017 WL 4857017, at *5 (quoting *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962)). It does not matter if he "would not have signed the arbitration agreement if the concept of arbitration had been explained to [him]...." *Saenz*, No. 01-20-00850-CV, 2021 WL 4733460, at *4 (Tex. App.—Houston [1st Dist.] Oct. 12. 2021, pet. denied).

56.     The court can readily conclude that Plaintiffs understood the arbitration provision because they did not ask questions, did not request any explanations, and did not indicate they were uneducated or illiterate, *In re Rangel*, 45 S.W.3d at 787.

57.    Lastly, Plaintiffs were presented with a Spanish translation of the Agreement before signing. A true and correct copy of the Affidavit of Isaac Hernandez is attached hereto as Exhibit D.

## II.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Equisolar prays the Court grant its motion to compel arbitration, and for such other and further relief, both general and special, at law or in equity, to which it may show to be justly entitled.

Dated:  May 20, 2024.                    Respectfully submitted,

By: /s/ *Lema Mousilli*
LEMA MOUSILLI
Attorney-in-charge
State Bar No. 24056016
S.D. Texas Bar No. 1358290
**LLOYD & MOUSILLI, PLLC**
11807 Westheimer Road
Suite 550 PMB 944
Houston, TX 77077
Tel: (512) 609-0059
Fax: (281) 783-8565
*litigation@lloydmousilli.com*

**ATTORNEYS FOR DEFENDANT, EQUISOLAR, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record, pursuant to the District's ECF service rules on May **20, 2024,** *via electronic filing system* on the following:

Brandon A. Kinard
Abraham Garcia
Carlos A. Saldana
KGS LAW GROUP
150 W Parker Rd, Suite 705-B
Houston, Texas 77076

*kgs@kgslawgroup.com*
Attorneys for Plaintiff

<span style="margin-left:40%">*/s/ Lema Mousilli*</span>
<span style="margin-left:40%">Lema Mousilli</span>